**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE CERENCE STOCKHOLDER DERIVATIVE LITIGATION | Master File No. 1:22-cv-10723-ADB |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER THE APPLICABLE FORUM-SELECTION CLAUSE**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ......................................................................................................................... 2

ARGUMENT .............................................................................................................................. 4

   I.    Cerence's Bylaw Section 12.6 Applies to This Action ......................................................... 4

   II.    Bylaw Section 12.6 Expressly Allows This Action to Proceed Here ................................... 5

        A.    A Contractual Analysis Governs Interpretation of the Charter
            and Bylaws ................................................................................................................. 5

        B.    Harmonizing Bylaw Section 12.6 and Certificate of Incorporation
            Article X Demonstrates This Action is in the Correct Forum ................................... 6

CONCLUSION .......................................................................................................................... 11

i

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*,
   73 A.3d 934 (Del. Ch. 2013)........................................................................................6

*City of Providence v. First Citizens BancShares Inc.*,
   99 A.3d 229 (Del. Ch. 2014).......................................................................................4

*CytRx Corp. S'holder Deriv. Litig.*,
   2015 WL 9871275 (C.D. Cal. Oct. 30, 2015)..............................................................4

*Drulias v. 1st Century Bancshares, Inc.*,
   30 Cal. App. 5th 696 (2018) .......................................................................................4

*E.I. du Pont de Nemours & Co., Inc. v. Allstate Ins. Co.*,
   693 A.2d 1059 (Del. 1997) .........................................................................................5

*Frantz Mfg. Co. v. EAC Indus.*,
   501 A.2d 401 (Del. 1985) ...........................................................................................6

*Gentile v. SinglePoint Fin., Inc.*,
   788 A.2d 111 (Del. 2001) ...........................................................................................5

*In re iBasis, Inc. Derivative Litig.*,
   551 F. Supp. 2d 122 (D. Mass. 2008) .........................................................................4

*Kirby v. Kirby*,
   1987 WL 14862 (Del. Ch. July 29, 1987)...................................................................9

*Klaassen v. Allegro Dev. Corp.*,
   2013 WL 5739680 (Del. Ch. Oct. 11, 2013)
   *aff'd*, 82 A.3d 730 (Del. 2013)...................................................................................9

*Lions Gate Ent. Corp. v. Image Ent. Inc.*,
   2006 WL 1668051 (Del. Ch. June 5, 2006)..........................................................5, 6, 9

*Lorillard Tobacco Co. v. Am. Legacy Found.*,
   903 A.2d 728 (Del. 2006). ..........................................................................................5

ii

*Murfey v. WHC Ventures, LLC*,
   236 A.3d 337 (Del. 2020 ..................................................................................................7

*Nahass v. Harrison*,
   207 F. Supp. 3d 96 (D. Mass. 2016) ...............................................................................5

*NAMA Hldgs., LLC v. World Mkt. Ctr. Venture, LLC*,
   948 A.2d 411 (Del. Ch. 2007) ........................................................................................5

*North v. McNamara*,
   47 F. Supp. 3d 635 (S.D. Ohio 2014). ............................................................................4

*Rhone–Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co.*,
   616 A.2d 1192 (Del. 1992) ..............................................................................................5

*Rockwell Int'l Corp. v. U.S.*,
   549 U.S. 457 (2007) .........................................................................................................5

*Texas Pac. Land Corp. v. Horizon Kinetics LLC*,
   306 A.3d 530 (Del. Ch. 2003) .....................................................................................6, 9

*Zimmerman v. Crothall*,
   62 A.3d 676 (Del. Ch. 2013) ...........................................................................................5

Statutes

Section 115 of the DGCL ............................................................................................................10

## PRELIMINARY STATEMENT

There is no basis to dismiss this action due to the forum selection clause.  The amended complaint alleges violations of Section 14(a) and of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act").  ECF No. 18 (the "Amended Complaint"), ¶¶ 187-94, 202-208. Nominal Defendant Cerence Inc. ("Cerence" or the "Company") has a bylaw forum selection clause that unambiguously states that "federal district courts of the United States of America shall be the sole and exclusive forum for resolving any complaint asserting a cause of action arising under the [Exchange Act]."  *See* Motion to Dismiss ("MTD") Exhibit 3 (Cerence Inc. Second Amended and Restated By-Laws § 12.6 (Apr. 28, 2023)).  Because the Amended Complaint asserts two causes of action arising under the Exchange Act, this forum is proper.

Defendants, in a blatant attempt to forum shop following an unfavorable result on their motion to dismiss in the related securities class action, ask the Court to ignore the clear language of bylaw Section 12.6 in favor of a different forum selection clause in the Company's certificate of incorporation.  However, fatally undermining their argument, Defendants contend repeatedly that the bylaw forum clause and the certificate of incorporation forum clause do not conflict and should be "harmonized."  *See* MTD at 9-10.  Harmonizing the two clauses, they claim, requires the Court to invent language carving derivative actions out of bylaw Section 12.6.

Defendants are wrong.  The two clauses can and should be harmonized, but the result is not what Defendants urge.  The certificate of incorporation was enacted in 2019.  The bylaw amendment was enacted in 2023.  The certificate of incorporation forum clause contains an exception where the "Corporation consents in writing to the selection of an alternative forum." *See* MTD, Ex. 1 (Amended and Restated Certificate of Incorporation of Cerence Inc., art. X (Oct. 1, 2019)).  The bylaw amendment is just that: the corporation's consent in writing to the selection of any U.S. District Court for complaints alleging Exchange Act claims, without regard to whether

1

they are direct or derivative.  As set forth below, there are several additional reasons that a contract analysis harmonizing the two provisions requires the conclusion that bylaw Section 12.6 permits this action to proceed here.

In any event, to the extent there is any ambiguity in how the two clauses interact, that is Defendants' fault as the drafters of both.  The Company concedes that there is "uncertainty" as to whether the bylaw amendment will be enforced as to derivative claims of the Exchange Act. *See* Declaration of Benjamin I. Sachs-Michaels ("Sachs-Michaels Decl.") filed herewith, Ex. A. It is settled law that in cases of ambiguity terms are construed against the drafter.  It is a problem of Defendants' own making if the governing documents that they drafted and enacted are unclear, especially because Cerence was aware of the ambiguity and decided not to clarify it.

Finally, Defendants' half-hearted contention, advanced without a shred of support, that Section 12.6 might not apply because this action was commenced before it was enacted, is meritless.  Plaintiffs amended their complaint after enactment of the bylaw, and jurisdiction is assessed as of the filing of an amended complaint.  Had Defendants raised the forum issue before they enacted bylaw Section 12.6, perhaps the analysis would be different.  But they did not make a forum motion before the enactment of bylaw Section 12.6.  Instead, while this action was pending and they were on actual notice of it, Defendants took it upon themselves to enact a forum bylaw expressly permitting this action to proceed here.  All shareholders are bound equally by the Company's bylaws and Defendants' position on this issue would lead to absurd results.

For these reasons and those that follow, Plaintiffs respectfully request that Court deny Defendants' motion in its entirety.

## **BACKGROUND**

This action was commenced on May 10, 2022 by plaintiff William Shafer.  ECF No. 1.  On May 12, 2022, plaintiff Peter Morse filed a substantially similar action.  The Court consolidated

the two actions by agreement of the parties on June 13, 2022.  ECF No. 14.  The same day, the

parties stipulated to stay the consolidated action pending the outcome of the Company's

anticipated motion to dismiss in the related securities class action, *City of Miami Firefighters' and*

*Police Officers' Retirement Trust v. Cerence Inc.*, et al., No. 1:22-10321-ADB (the "Securities

Action").  ECF No. 15.  The Court so ordered the stay stipulation on June 27, 2022.  ECF No. 16.

At the time, the Company and did not file a forum motion or take the position that this action was

in the wrong court.  *See* ECF Nos. 13, 15.  Nor did the Company even raise the existence of a

forum clause or expressly reserve the right to assert that the action was in the wrong forum.  *Id*.

On April 28, 2023, Cerence adopted amended bylaws containing as Section 12.6 a forum

clause applicable to this action:

> SECTION 12.6 Exclusive Jurisdiction of United States Federal District Courts.
> Unless the Corporation consents in writing to the selection of an alternative forum,
> the federal district courts of the United States of America shall be the sole and
> exclusive forum for resolving any complaint asserting a cause of action arising
> under the Securities Act of 1933, as amended, the Exchange Act, or the respective
> rules and regulations promulgated thereunder. To the fullest extent permitted by
> law, any person or entity purchasing or otherwise acquiring any interest in shares
> of capital stock of the Corporation shall be deemed to have notice of and consented
> to the provisions of this Section 12.6.

MTD, Ex. 3.

As permitted by the order staying the action, on September 12, 2023, while the action was

stayed, Plaintiffs filed the Amended Complaint. ECF No. 18.  The Amended Complaint alleges

violations of Section 14(a) and of Section 10(b) of the Exchange Act.  *Id.* at ¶¶ 187-94, 202-208.

Defendants still did not raise, on or off the record, any concern that this action was pending in the

wrong forum.

On March 25, 2024, the Court entered an order denying defendants' motion to dismiss the

Securities Action.  Securities Action, ECF No. 51.  Apparently dissatisfied with the Court's denial

of the motion to dismiss in the Securities Action, Defendants now seek to dismiss this action in favor of a similar, later-filed case pending in Delaware Chancery Court since August 2023.

## **ARGUMENT**

### I.    **Cerence's Bylaw Section 12.6 Applies to This Action**

As a threshold matter, the Company questions whether Section 12.6 of the bylaws applies here because it was enacted after the action was commenced.  MTD, at 9.  However, in its' 2023 Form 10-K, the Company clearly disclosed that the bylaw provision would apply to "any" holder of Cerence stock.  2023 Form 10-K, at 30 ("***Any*** person or entity purchasing or otherwise acquiring ***or holding any interest in shares of our capital stock*** will be deemed to have notice of and to have consented to these provisions.") (emphasis added).  Similarly, numerous courts have held that forum selection bylaws can, and do, retroactively apply to wrongdoing that occurred or litigation that was filed prior to their enactment. *See Drulias v. 1st Century Bancshares, Inc*., 30 Cal. App. 5th 696, 709 (2018) (Delaware forum selection bylaw adopted after commencement of action was enforceable); *In re: CytRx Corp. S'holder Deriv. Litig.*, 2015 WL 9871275, at *5 (C.D. Cal. Oct. 30, 2015)("the timing of a forum-selection clause's adoption does not dictate the clause's validity"); *North v. McNamara*, 47 F. Supp. 3d 635, 645 (S.D. Ohio 2014) (rejecting argument that "timing of adoption" of forum selection clause should render it unenforceable); *City of Providence v. First Citizens BancShares Inc*. 99 A.3d 229, 241 (Del. Ch. 2014) (rejecting argument that forum selection bylaw could not be applied to claims that arose before it was adopted).

Moreover, the Amended Complaint was filed after enactment of the bylaw.  When the Amended Complaint was filed, the U.S. District Courts had exclusive jurisdiction over actions alleging Exchange Act claims.  "[W]hen an amended pleading… supercedes the original complaint, jurisdiction is determined based on the amended pleading." *In re iBasis, Inc. Derivative Litig*., 551 F. Supp. 2d 122, 125–26 (D. Mass. 2008).  "[W]hen a plaintiff files a complaint in

4

federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457, 474 (2007).

## II.    Bylaw Section 12.6 Expressly Allows This Action to Proceed Here

### A.    A Contractual Analysis Governs Interpretation of the Charter and Bylaws

The parties agree that Delaware law applies to the contractual analysis of the forum selection clauses. *See* MTD, at 9 (citing *Nahass v. Harrison*, 207 F. Supp. 3d 96, 104 (D. Mass. 2016)). "It is a fundamental principle that the rules used to interpret statutes, contracts, and other written instruments are applicable when construing corporate charters and bylaws." *Gentile v. SinglePoint Fin., Inc.*, 788 A.2d 111, 113 (Del. 2001). Under Delaware law, "[w]hen interpreting a contract, the court's role is to effectuate the parties' intent based on the parties' words and the plain meaning of those words." *Zimmerman v. Crothall*, 62 A.3d 676, 690 (Del. Ch. 2013) (citing *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006)). "Clear and unambiguous language . . . should be given its ordinary and usual meaning." *Lorillard Tobacco*, 903 A.2d at 739. "Contractual interpretation operates under the assumption that the parties never include superfluous verbiage in their agreement, and that each word should be given meaning and effect by the court." *NAMA Hldgs., LLC v. World Mkt. Ctr. Venture, LLC*, 948 A.2d 411, 419 (Del. Ch. 2007), *aff'd*, 945 A.2d 594 (Del. 2008).

If a contract is ambiguous, however, a court may consider extrinsic evidence, including "evidence of prior agreements and communications of the parties as well as trade usage or course of dealing." *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1233 (Del. 1997). "To demonstrate ambiguity, a party must show that the instruments in question can be reasonably read to have two or more meanings." *Lions Gate Ent. Corp. v. Image Ent. Inc.*, 2006 WL 1668051, at *4 (Del. Ch. June 5, 2006) (citing *Rhone–Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992)); *accord E.I. du Pont de Nemours & Co., Inc. v. Allstate Ins.*

*Co.*, 693 A.2d 1059, 1061 (Del. 1997). Importantly, when a contract is ambiguous, the ambiguity is construed against the drafter. *Lions Gate*, 2006 WL 1668051, at *6; *see also Texas Pac. Land Corp. v. Horizon Kinetics LLC*, 306 A.3d 530, 548 (Del. Ch.), *aff'd sub nom. Horizon Kinetics LLC v. Texas Pac. Land Corp.*, 2024 WL 763616 (Del. Feb. 26, 2024) ("if one party has drafted a contract unilaterally and presented it on a take-it-or-leave-it basis, then any ambiguities 'must be construed against [the party] drafting.'").

### B.   Harmonizing Bylaw Section 12.6 and Certificate of Incorporation Article X Demonstrates This Action is in the Correct Forum

Bylaw Section 12.6 specifically and unequivocally applies to this action, which alleges two causes of action arising under the Exchange Act. Section 12.6 ("the federal district courts of the United States of America shall be the sole and exclusive forum for ***resolving any complaint asserting a cause of action arising under the Securities Act of 1933, as amended, the Exchange Act***.") (emphasis added). "'The bylaws of a corporation are presumed to be valid, and the courts will construe the bylaws in a manner consistent with the law rather than strike down the bylaws.'" *Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 948 (Del. Ch.), *judgment entered sub nom. Boilermakers Loc. 154 Ret. Fund & Key W. Police & Fire Pension Fund v. Chevron Corp.* (Del. Ch. 2013) (citing *Frantz Mfg. Co. v. EAC Indus.*, 501 A.2d 401, 407 (Del. 1985)).

Section 12.6 broadly applies to any action where the complaint asserts even a single claim under the Exchange Act, without regard to whether the complaint is styled as direct, derivative, or something else. By its plain meaning, Section 12.6 designates the forum for any ***complaint*** alleging an Exchange Act claim, even if the complaint alleges other claims that do not arise under the Exchange Act. Had the drafters of Section 12.6 wanted the clause to apply only to direct actions, or only to ***claims*** under the Exchange Act as opposed to an entire complaint that includes

one or more Exchange Act claims, they would have said so.[1]  Likewise, that Section 12.6 depends on the presence of Exchange Act claims in a complaint and does not depend on whether the complaint at issue is direct or derivative, class or individual, means that the drafters intended the provision to apply to all of them.  Indeed, as Defendants emphasize, the Company's governing documents elsewhere do distinguish between direct and derivative claims.  The drafters of the bylaw were aware of the distinction and chose not to invoke it. The limitation that Defendants now seek to impose does not appear on the face of Section 12.6.  *See Murfey v. WHC Ventures, LLC*, 236 A.3d 337, 356 (Del. 2020) ("[C]ourts cannot rewrite contracts or supply omitted provisions . . . particularly where the parties could have easily drafted such terms and conditions.").

Defendants, to avoid litigating in this Court after their loss on the motion to dismiss in the Securities Action, point to Article X in the Company's Certificate of Incorporation, which provides:

> ***Unless the Corporation consents in writing to the selection of an alternative forum***, the sole and exclusive forum for (a) any derivative action or proceeding brought on behalf of the Corporation, (b) any action asserting a claim of breach of a fiduciary duty owed by any current or former director, officer or other employee or stockholder of the Corporation to the Corporation or the Corporation's stockholders… shall be the Court of Chancery of the State of Delaware, in all cases to the fullest extent permitted by law, or, if the Court of Chancery of the State of Delaware does not have jurisdiction, any other state or federal court located within the State of Delaware.

MTD, Ex. 1 (emphasis added).  Critically, the Company does not assert that Article X should be given effect ***instead*** of Section 12.6, but rather that the two provisions do not conflict and must be

---

[1]    For this reason, Defendants' footnote argument that somehow the state law claims can only proceed in Delaware Chancery Court is incorrect.  *See* MTD, at 7 n.5.  If Section 12.6 referred to the exclusive forum for Exchange Act ***claims*** instead of "any complaint" alleging violations of the Exchange Act, perhaps Article X would require severing of the state claims.  But Section 12.6 does not, and its plain language clearly applies to state claims in a complaint also alleging violations of the Exchange Act.

harmonized to give effect to each.  MTD, at 9-10 (collecting cases and asserting "Delaware law requires Section 12.6 of the Bylaws to be interpreted harmoniously with Article X of the Charter if possible").  However, the Company's proposed interpretation of the two provisions does not harmonize them.  Instead, it asks the Court to read an exclusion of derivative actions into Section 12.6 that simply does not exist in the text and for which there is no basis.

Plaintiffs agree that the two clauses do not conflict and should be harmonized.  But the two clauses can be harmonized in way that gives effect to the language of each and does not ask the Court to invent language in either.  The result is not what the Company suggests.  The forum clause in Article X contains an exception for situations where the "the Corporation consents in writing to the selection of an alternative forum…".  MTD, Ex. 1, Art. X.  The Board's decision to adopt Section 12.6 in the Company's bylaws is exactly that: consent in writing to the selection of an alternate forum for Exchange Act claims.

Article X to the Certificate of Incorporation was enacted in 2019.  MTD, at 2.  Article X applies specifically to derivative actions but makes no mention of actions or claims arising under the Exchange Act.  *Id*.  Section 12.6, by contrast, deals exclusively with Exchange Act claims and specifically applies to all actions asserting Exchange Act claims, regardless of whether derivative or direct.  Section 12.6 was enacted in 2023, four years after Article X of the Certificate of Incorporation.  MTD, at 2.  When the Board adopted Section 12.6, it was aware of shareholder derivative actions and that Article X applied to shareholder derivative actions generally.  It chose not to carve derivative actions out of Section 12.6 or to narrow its language to apply only to ***claims*** arising under the Exchange Act.  By simply construing Section 12.6 as the subsequent "consent in writing" contemplated by the earlier Article X, the Court can harmonize both provisions while giving effect to all the language in both.  This interpretation closely follows the text and does not ask the Court to invent language in either provision that does not exist, as the Company requests.

Nor does this this reading require the Court to conclude that one of the provisions is void. *See, e.g., Klaassen v. Allegro Dev. Corp.*, 2013 WL 5739680, at \*24-25 (Del. Ch. Oct. 11, 2013) (construing bylaw "to avoid" potential "conflicts with [Delaware statute] and the Charter," and explaining that "courts will construe the bylaws in a manner consistent with the law rather than strike down the bylaws"), *aff'd*, 82 A.3d 730 (Del. 2013); *Kirby v. Kirby*, 1987 WL 14862, at \*3 (Del. Ch. July 29, 1987) ("[T]he Court should attempt to reconcile the amended bylaw with the certificate").  Section 12.6 therefore simply clarifies that the "district courts of the United States of America" are the forum for any action alleging Exchange Act claims, whether derivative or direct.

To the extent that there is any ambiguity in the interaction between the two clauses, it is construed against the drafter, the Company, and the motion must be denied on that basis. *See Lions Gate*, 2006 WL 1668051, at \*6 ("any ambiguity in [a bylaw provision] must… be construed against the drafter.").  "If management has drafted an ambiguous provision… and presented it on a take-it-or-leave-it basis to investors, then the court does not look to extrinsic evidence to resolve the ambiguity but rather applies the principle of *contra proferentem* to reach a result consistent with the traditional expectations." *Texas Pac. Land Corp.*, 306 A.3d at 549.  Here, the traditional expectation is that shareholders may file suit to vindicate their rights against wayward fiduciaries in any court with venue and jurisdiction.

Nevertheless, here the extrinsic evidence demonstrates that according to the Company itself, Plaintiffs' reading is correct.  Cerence's public filings show that it intended Section 12.6 to

9

apply to derivative actions alleging claims under the Exchange Act.  In an exhibit to the Company's

2023 Form 10-K,[2] the Company disclosed:

> Our certificate of incorporation provides, in all cases to the fullest extent permitted by law, that unless we consent in writing to the selection of an alternative forum, the Court of Chancery located within the State of Delaware will be the sole and exclusive forum for any derivative action or proceeding brought on behalf of Cerence, any action asserting a claim of breach of a fiduciary duty owed by any director, officer or other employee or stockholder of Cerence to Cerence or Cerence's stockholders, any action asserting a claim arising pursuant to the DGCL or as to which the DGCL confers jurisdiction on the Court of Chancery located in the State of Delaware, any action asserting a claim governed by the internal affairs doctrine or any other action asserting an "internal corporate claim" as that term is defined in Section 115 of the DGCL. However, if the Court of Chancery within the State of Delaware does not have jurisdiction, the action may be brought in any other state or federal court located within the State of Delaware. Further, our by-laws provide that unless Cerence consents in writing to the selection of an alternative forum, the federal district courts of the United States of America shall be the sole and exclusive forum for resolving any complaint asserting a cause of action arising under the Securities Act of 1933, as amended, the Exchange Act, or the respective rules and regulations promulgated thereunder. ***There is, however, uncertainty as to whether a court would enforce such provision in connection with suits to enforce a duty or liability created by the Securities Exchange Act of 1934, as amended, or the Securities Act of 1933, as amended, if brought derivatively on behalf of Cerence***, and our stockholders will not be deemed to have waived our compliance with the federal securities laws and the rules and regulations thereunder.

Sachs-Michaels Decl., Ex. A (2023 Form 10-K, Ex. 4.3) (emphasis added).  If Cerence's position

were that Section 12.6 does not apply to derivative actions alleging Exchange Act claims, it would

have said so in the foregoing disclosure.  Instead, it alerted shareholders to "uncertainty as to

whether a court would enforce [Section 12.6] in connection with suits to enforce [the Exchange

Act], if brought derivatively."  That is, the Company's position was that Section 12.6 ***should*** apply

---

[2]      In a footnote, Defendants mistakenly claim that this language appears in the 2022 Form 10-K and is therefore irrelevant.  MTD, at 10 n.7.  That assertion is refuted by the content of their own public filings.  In fact, the disclosure was made in the 2023 Form 10-K, after adoption of Section 12.6.  Sachs-Michaels Decl., Ex. B.

to derivative actions alleging Exchange Act claims, but it warned that there was uncertainty whether a court would do so.

Accordingly, harmonizing the two forum provisions and giving effect to each requires the conclusion that bylaw Section 12.6 permits this action to proceed here.  Additionally, if there is any ambiguity in how the two clauses interact with each other, that ambiguity is construed against the Company and the motion must be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion in its entirety.

Dated: June 7, 2024                                      Respectfully submitted,

/s/ Jonathan P. Whitcomb

**DISERIO MARTIN O'CONNOR & CASTIGLIONI LLP**
Jonathan P. Whitcomb
Christina M. Volpe
40 Broad Street
Boston, MA 02109
Tel: (617) 906-3359
Fax: (203 348-2321
jwhitcomb@dmoc.com
cvolpe@dmoc.com

*Liaison Counsel for Plaintiffs*

**JOHNSON FISTEL LLP**
Michael I. Fistel
40 Powder Springs Street
Marietta, GA 30064
Tel: (470) 632-6000
Fax: (770) 200-3101
michaelf@johnsonfistel.com

Frank J. Johnson
655 West Broadway, Suite 1400
San Diego, CA 92101
Tel: (619) 230-0063
Fax: (619) 255-1856

frankj@johnsonfistel.com

**GLANCY PRONGAY & MURRAY LLP**
Benjamin I. Sachs-Michaels
745 Fifth Avenue, Fifth Floor
New York, NY 10151
Tel: (212) 935-7400
Fax: (212) 756-3630
bsachsmichaels@glancylaw.com

Robert V. Prongay
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Tel: (310) 201-9150
rprongay@glancylaw.com
prajesh@glancylaw.com

*Co-Lead Counsel for Plaintiffs*