UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE CERENCE STOCKHOLDER DERIVATIVE ACTION | Civil Action No. 1:22-cv-10723-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiffs William Shafer and Peter Morse ("Plaintiffs") bring this consolidated derivative action against nominal Defendant Cerence, Inc. ("Cerence" or "the Company") and various officers and directors (collectively with Cerence, "Defendants"), alleging violations of various provisions of the Exchange Act, as well as asserting claims for breach of fiduciary duty, unjust enrichment, and insider trading. See generally [ECF No. 18 ("Consolidated Amended Complaint" or "CAC")]. Before the Court is Defendants' motion to dismiss, seeking to enforce a forum-selection clause in the Company's 2019 Charter that designates Delaware state or federal court as the exclusive venue for this action. [ECF No. 30]. For the reasons set forth below, Defendants' motion is **DENIED**.

I. **BACKGROUND**

   A. **Factual Background**[1]

Cerence, a Delaware corporation headquartered in Burlington, Massachusetts, is a technology company that builds artificial intelligence-powered virtual assistants for automakers

---

[1] The following facts are taken from the Consolidated Amended Complaint, the well-pleaded factual allegations of which are assumed to be true when considering a motion to dismiss, see Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014), as well as "documents incorporated by reference in [the complaint], matters of public record, and other matters

and other manufacturers.  [CAC ¶¶ 30, 41].  It became a standalone public company on October 1, 2019, when it was spun off from Nuance Communications, Inc.  [Id. ¶ 30].

Since the spin-off, Article X of Cerence's Charter has provided that,

> Unless the Corporation consents in writing to the selection of an alternative forum, the sole and exclusive forum for (a) any derivative action or proceeding brought on behalf of the Corporation, (b) any action asserting a claim of breach of a fiduciary duty owed by any current or former director, officer or other employee or stockholder of the Corporation to the Corporation or the Corporation's stockholders . . . shall be the Court of Chancery of the State of Delaware, in all cases to the fullest extent permitted by law, or, if the Court of Chancery or the State of Delaware does not have jurisdiction, any other state or federal court located within the State of Delaware.

[ECF No. 32-1 at 7 ("the Charter")].  The bylaws put in place at the time of the spinoff in 2019 did not have any relevant forum-selection provision.  See generally [ECF No. 32-2].

On April 28, 2023, Cerence adopted amended bylaws with a new Section 12.6, titled "Exclusive Jurisdiction of United States Federal District Courts."  [ECF No. 32-3 at 27 ("the Bylaws"].  Section 12.6 provides:

> Unless the Corporation consents in writing to the selection of an alternative forum, the federal district courts of the United States of America shall be the sole and exclusive forum for resolving any complaint asserting a cause of action arising under the Securities Act of 1933, as amended, the Exchange Act, or the respective rules and regulations promulgated thereunder.

[Id.].

### B.     Procedural History

The instant consolidated action originated as two related derivative cases.  On May 10 and 12, 2022, respectively, plaintiffs William Shafer and Peter Morse filed verified shareholder

---

susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)).  Because the dispute involves clauses within the Company's charter and bylaws, many facts are taken from the Company's public filings, which are susceptible to judicial notice.  See, e.g., Mahoney v. Found. Med., Inc., 342 F. Supp. 3d 206, 216 n.4 (D. Mass. 2018).

derivative complaints on behalf of nominal Defendant Cerence against various current and former officers and directors. [ECF No. 1]; see also Morse v. Dhawan et al., No. 1:22-cv-1073 (D. Mass.). On June 10, 2022, the parties stipulated to the consolidation of the two derivative cases, and the Court endorsed the stipulation. [ECF Nos. 13, 14]. The same day, the parties stipulated to stay the consolidated action pending the outcome of the Company's anticipated motion to dismiss in a related securities class action, City of Miami Firefighters' & Police Officers' Retirement Tr. v. Cerence Inc., No. 1:22-10321 (the "Securities Action"); [ECF No. 15]. In accord with the stipulation, the Court stayed the case on June 27, 2022. [ECF No. 16]. On September 12, 2023, during the stay, Plaintiffs filed the operative Consolidated Amended Complaint. See generally [CAC].

Another derivative case was filed in Delaware Court of Chancery on August 17, 2023. Catherine Fleming v. Sanjay Dhawan, et. al., No. 2023-0845 (Del. Ch.) (the "Delaware Action"), with substantially similar allegations. The Delaware Action was also stayed pending the decision on the motion to dismiss in the Securities Action. [ECF No. 32-5].

On March 25, 2024, the Court entered an order granting in part and denying in part Defendants' motion to dismiss the Securities Action. [Securities Action, ECF No. 51]. As a result, the stay in this action was lifted, and the Court ordered briefing on whether the action should be dismissed in light of any relevant forum-selection clause. [ECF No. 29]. Defendants filed their motion to dismiss on May 24, 2024, [ECF No. 30], which Plaintiffs opposed on June 7, 2024, [ECF No. 33].

## II.     STANDARD OF REVIEW

In the First Circuit, courts "treat a motion to dismiss based on a forum selection clause as a motion alleging the failure to state a claim for which relief can be granted under Rule

3

12(b)(6)." Claudio-De León v. Sistema Universitario Ana G. Mendez, 775 F.3d 41, 46 (1st Cir. 2014) (quoting Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009)); see also Rivera v. Kress Stores of P.R., Inc., 30 F.4th 98, 102 (1st Cir. 2022) (holding that it is "permissible" to enforce a forum-selection clause via Rule 12(b)(6)).

Under Rule 12(b)(6), a complaint "must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)).  This pleading standard requires "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

### III.  DISCUSSION

Typically, a motion to dismiss pursuant to a forum selection clause requires a three-part inquiry.  First, "the threshold question in interpreting a forum selection clause is whether the clause at issue is permissive or mandatory." Claudio-De León, 775 F.3d at 46 (quoting Rivera, 575 F.3d at 17).  Permissive forum-selection clauses "authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere," whereas mandatory forum-selection clauses require that litigation occur "exclusively in the designated forum." Id. (quoting Rivera, 575 F.3d at 17).  "The next step in evaluating the applicability of a forum selection clause is ascertaining its scope," id. at 47, namely, whether the forum selection clause covers the claims at issue.  "[T]he final step in evaluating the clause involves asking 'whether there is some reason

the presumption of enforceability should not apply.'" Id. at 48 (quoting Rafael Rodriguez Barril, Inc. v. Conbraco Indus., Inc., 619 F.3d 90, 93 (1st Cir. 2010)).

As briefed by the parties, the present motion turns not on the enforceability of a forum selection clause but rather on which forum selection clause applies to this action – Article X of the Charter or Section 12.6 of the Bylaws.[2]  Defendants argue that the Charter controls because, under Delaware law,[3] "the charter always wins; a 'bylaw that conflicts with the charter is void,'" [ECF No. 31 at 14 (quoting Manti Holdings, LLC v. Authentix Acquisition Co., Inc., 261 A.3d 1199, 1240 (Del. 2021)], and, because of this, "Delaware courts attempt to reconcile corporate charters and bylaws wherever possible," [id.].[4]  The Charter requires derivative actions to be brought in Delaware state or federal court, while the Bylaws provide exclusive jurisdiction to

---

[2] If the Charter governs over Section 12.6, Plaintiffs do not offer any argument that it is permissive, rather than mandatory, that it does not encompass their claims, or that it is otherwise unenforceable.  See generally [ECF No. 33].  If Section 12.6 applies, Defendants similarly offer no argument on these points.  Thus, the Court's analysis focuses on which document governs, rather than on the traditional enforceability factors.

[3] The parties agree that Delaware law applies to the contractual analysis of the forum selection clauses.  [ECF No. 33 at 9].

[4] Defendants argue (briefly) that the Bylaws cannot serve as the forum selection clause in this action because they were not in effect when Plaintiffs filed their original complaints, [ECF No. 31 at 14], although they were in effect when Plaintiffs filed the Consolidated Amended Complaint.  Defendants do not provide any authority to support the proposition that the Bylaws must predate the original actions, rather than the consolidated action, and courts frequently enforce forum selection clauses pursuant to bylaws that were not in effect when litigation was filed.  See, e.g., Goldstein v. Neuman, No. A161727, 2021 WL 5317198, at *3 (Cal. Ct. App. Nov. 16, 2021) ("Plaintiff has not cited, and we have not located, any authority holding that a newly enacted forum selection bylaw cannot be applied to pending litigation as a matter of law."); City of Providence v. First Citizens BancShares, Inc., 99 A.3d 229, 241 (Del. Ch. 2014) (rejecting argument that forum selection bylaw could not be enforced because it sought to regulate the forum for asserting claims that arose before it was adopted (citing Kidsco Inc. v. Dinsmore, 674 A.2d 483, 492 (Del. Ch. 1995)); id. at 241 n. 50 ("[W]here a corporation's articles or bylaws 'put all on notice that the by-laws may be amended at any time, no vested rights can arise that would contractually prohibit an amendment.'").

federal courts, in Delaware or elsewhere, for "any complaint" — derivative or direct — asserting a cause of action under the Exchange Act. Defendants argue that, because the Bylaws "conflict" with the Charter by permitting derivative actions in federal courts outside of Delaware, the Bylaws must be read "harmoniously" with the Charter to require any derivative actions against the Company to be brought in the federal district court for the District of Delaware. [ECF No. 31 at 7, 14–15]. Plaintiffs, on the other hand, assert that there is no conflict, pointing to language in the Charter that Defendants ignore – namely, that derivative claims are to be brought in Delaware "[u]nless the Corporation consents in writing to the selection of an alternative forum." [ECF No. 33 at 11–12].

Ultimately, Plaintiffs' argument is more availing. The Charter, enacted in 2019, contemplated that the Board might "consent[ ] in writing" to derivative actions being brought in an alternative forum. [ECF No. 32-1 at 7]. The Bylaws, instituted four years later, provide (in writing) that for derivative actions, including those that bring Exchange Act claims, any federal court may serve as such an alternative forum. [ECF No. 32-3 at 27]. Read this way, the Charter and the Bylaws do not conflict, and Defendants provide no argument or authority (nor is the Court aware of any) as to why the Board's adoption of the Bylaws would not constitute the precise written consent contemplated in Article X.

In the absence of a conflict, at best, Defendants' argument is that the Bylaws are ambiguous as they do not specify whether "any complaint" includes those brought derivatively and contemplated under Article X. In that instance, however, Delaware courts are clear that "[c]orporate charters and bylaws are contracts among a corporation's shareholders [such that Delaware] rules of contract interpretation apply," Airgas, Inc. v. Air Prods. & Chems., Inc., 8 A.3d 1182, 1188 (Del. 2010), including that "any ambiguity. . . must . . . be construed against the

6

drafter," <u>Lions Gate Ent. Corp. v. Image Entm't Inc.</u>, No. 2011-N, 2006 WL 1668051, at *6 (Del. Ch. June 5, 2006). As Plaintiffs argue, "[w]hen the Board adopted Section 12.6, it was aware of shareholder derivative actions and that Article X applied to shareholder derivative actions generally," and, despite this, "it chose not to carve derivative actions out of Section 12.6 or to narrow its language to apply only to **claims** arising under the Exchange Act." [ECF No. 33 at 12]. The Board did not do that, and, as they stand, the Bylaws are clear: "[F]ederal courts" have exclusive jurisdiction over "any complaint" bringing claims under the Exchange Act, which includes any derivative complaint bringing Exchange Act claims. The Court need go no further. <u>Zimmerman v. Crothall</u>, 62 A.3d 676, 690 (Del. Ch. 2013) ("When interpreting a contract, the court's role is to effectuate the parties' intent based on the parties' words and the plain meaning of those words.").

Because Section 12.6 permits derivative complaints alleging claims for violations of the Exchange Act to be brought in any federal court, and because Plaintiffs' Consolidated Amended Complaint brings such claims, Defendants' motion to dismiss is **<u>DENIED</u>**.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **<u>DENIED</u>**.

**SO ORDERED.**

December 20, 2024                                       <u>/s/ Allison D. Burroughs</u>
                                                                                                                                         ALLISON D. BURROUGHS
                                                                                                                                        U.S. DISTRICT JUDGE